Rogers, J.
I shall offer no apology, for dissenting from the • ©pinion of the court in this case. Whenever a judgment, which, comes before us on error, can be supported without a violation of *31 principle, it is my fixed determination to do so. I shall, in such cases, shut my eyes, as far as possible, to mere technical objections. I cannot consent to a reversal, for several reasons.
The judgment should, in my opinion, be affirmed, because the point which is now principally relied on, was never introduced to the attention of the court who tried the cause. This is apparent from the record, and was made still more manifest by what took place, during the discussion here. This court have, in several instances, said, that they will not interfere in such a case, unless to prevent the most glaring injustice. That it was dealing unfairly with the Court of Common Pleas, to reverse them for an error they did not commit.
I will not agree to reverse this judgment, because the error relied on, has never been assigned in this court; or, if it has, it has been assigned in such a loose, unsatisfactory way, that I must acknowledge my inability to discover it. What is the object of a special assignment of error, but to give information to the court, and the opposing counsel? It should be plainly assigned, and not a- mere matter of inference. We have a rule of court to this effect, and it is even worse than useless to have rules, unless they are adhered to. It gives the careless an advantage over the careful, and I am perfectly satisfied, that great evils have already arisen in the practice, from the relaxation of rules, so as to meet the fancied justice of a particular cause. Justice, or rather favours to one party, may be injustice to the other, and to the public, in introducing a laxity of practice, which delays the public business.
I am opposed to the reversal of this case, because I think it unnecessary; for if the defendant has any equity, that equity can be attained, and his right can be protected, without a reversal of the judgment.
It is said, that Michael Hawk was a surety, and without pretending to determine a fact which is denied, I shall take it for granted that he was so.
Adam Hawk and Michael Hawk, were jointly and severally bound in this bond. The plaintiff, at the time of entering into the contract, and now, have two securities, a real security, by operation of law, a lien on the land sold, and a personal one; viz. The bonds now in suit. These securities were intended for the benefit of the plaintiffs, and prima facie it will not be denied that the plaintiffs have a right to enforce either or both, at their election. If there had been two sureties, instead of one, it will hardly be disputed, that they could have proceeded on a joint and several bond, against one or qll;' that one of three sureties, could not come into court, and pray the court to stay the suit against him, on the ground, that the plaintiffs should proceed jcari passu, against the principal and the other surety. In this stage his equity would not arise. It is not a conditional, but an absolute undertaking on their part to pay the money. They are, as respects the *32 plaintiff, all principal, and it is on the faith of their undertaking, that he has parted with his land, and with an express understanding, that they will pay him his money when it becomes due. If the surety has any equity, when does it arise, and in what manner can it be enforced? If he wishes to have a remedy against the land pledged for the debt, his course is perfectly plain. Let him pay or tender to the plaintiff the amount which he has bound himself to pay; then his equity commences; and until this is done, he has no equity. If the plaintiff refuses to assign the remedy against the real fund, he has a right to the interposition of the court. He has a right to a substitution in the place of the plaintiff, to all his remedies against the land, which is bound as a security for the money.
In this view of the case, I am sustained by the authority of Hayes v.Ward and others, 4 Johns. Ch. R. 123. A surety who pays the debt, is entitled to be put in the place of the creditor, and to all the means, and every remedy, which the creditor possesses, to enforce payment from the principal debtor.
“ I am not aware,” says the chancellor, “ that there is any general rule in chancery, that a creditor must look to the principal debt- or, and exhaust his remedy against him before he can be permitted to resort to the surety. The general language in the books, and the practice has been otherwise, and the surety has been considered (without a formal adjudication on the point, and perhaps without any examination of its principle,) as amenable in ordinanary cases to the creditor in the first instance, though the creditor may have taken ample security from the principal debtor. The creditor has usually called on the surety, at his election, and left him to resort to the principal debtor for. his indemnity, after he has paid the debt, and after he has been clothed by substitution with all the rights and securities of the creditor.”
Under very particular circumstances, it is true, the surety has a right to call on the creditor, to do the best he can for his benefit. In this case, the attention of the Court of Common Pleas was not even called to the matter' now alleged — not assigned for error here. It is not even pretended, that there was payment or an offer to pay on the part of the surety. Now, I am at a loss to perceive, where those particular circumstances are, which give the surety a right to call on the creditor, to do the most, he can, for his benefit.
The bill of exceptions, on which the cause is reversed, is the exclusion of the record of a suit, still, depending; being an ejectment brought by the administrators of John Casper, deceased, against John Witman, who was in possession of the premises sold by the plaintiffs to Adam Hawk, at the time of suit brought in Lebanon Common Pleas, of November Term, 1821, No. 24.
Had this record been offered in evidence by the plaintiff, it would, in my opinion, have been error to have excluded it It would have *33 been evidence, because it would have shown that the plaintiffs were pursuing both the remedies at the same time. All pretence would have been removed for saying, that the plaintiffs were oppressing the surety, by compelling him to pay, when they have real security for their money.
The doctrine, that a creditor having a particular fund, may be compelled to resorfto that fund before he pursues the debtor personally, has been fully considered in the case of Hayes v. Ward, 4 Johns. Ch. R. and the chancellor has come to the conclusion, that such a general rule does not exist. “Without meaning,” say the court, “ to laydown any such general rule, (and for which I have not seen any sufficient authority in the equity jurisprudence of England,) I think the peculiar circumstances in this case, call for a continuance of the injunction.”
Suppose the record of the suit offered had been in evidence. It is said, it would have shown the existence of a lien for the purchase money against the land. -Would that have been a sufficient defence without more, or would not the plaintiff in this case have been entitled to judgment notwithstanding? The doctrine in equity, and I may say of common sense, is — The surety who pays the debt, is entitled to be substituted in the place of the creditor, and to all the remedy or means possessed by the creditor, to enforce payment from the principal debtor.
Here then there was neither judgment, nor tender of payment, but a mere offer of a record, which merely shows the existence of a lien on the property sold by the administrators.
I have already stated that I was opposed to the reversal of this case, because if the defendant has any equity, that equity can be obtained, and his rights protected without a reversal of the judgment; upon the payment of the money, until which, his equity-does not arise, he will have a right to be substituted in the ' place of the plaintiff, to be clothed with all his rights and securities. Let him pay, or tender the money due, and the court will, upon application, permit him to use the judgmentwhich has already been obtained against Jldam Hawk, and in this way reach the real fund. If the plaintiff will not assign, the court will give him lir berty to use his judgment, and will protect his equitable interest in it. Or they may stay the execution on this judgment until the plaintiff assign to him the judgment against Jldam Hawk.
But it is said, that the doctrine of substitution is an equitable principle of the court, and can only be exercised through the medium of a jury. That the equitable, as well as the legal power of the court, is ordinarily exercised in this way, I admit, but that it is the only or the best mode I deny. Suppose judgment bonds had been given on which judgment had been entered. The plaintiff proceeds against the surety and levies the money from him, how would the surety be substituted? Would it not’be an act of *34 the court alone, and would the intervention of a jury be necessary, unless some fact was denied ?
Two cases have been cited, to prove the doctrine that equity in Pennsylvania can only be administered through the instrumentality of a jury. The court, in Decamp v.Feay, 5 Serg. & Rawle, 323, decided that, on principles of equity, in Pennsylvania, the jury may find damages conditionally,prescribing the terms on which they shall be released; but that it is not competent to the court to instruct the jury to find damages sufficient to ensure a specific execution of a contract, and that the court would control the plaintiffs in the use of the verdict. Such an instruction as that to a jury, I would not hesitate to say, would be error. But I am at a loss to perceive the assertion of the principle, that the equity powers of the court can only be administered through the medium of a jury.
Nor am I disposed to differ with the court, when the damages are given absolutely, and as a measure of compensation, proportioned to the extent of the injury. I know not how the court can say they were given conditionally, and on that ground withhold the execution.
In the case of Minsker’s Lessee v. Morrison, 2 Yeates, 344, the court say that the Supreme Court, and the several Courts of Common Pleas, have an implied limited chancery jurisdiction under the words of the constitution. But this authority is to be used with sound discretion, and the intervention of a jury is indispensably necessary, according to the adopted practice. This, it will be observed, is a mere dictum, and cannot with propriety be extended further than to the case which was then before the court, which W’as an equitable action of ejectment, depending upon a number of disputed facts. Besides, it is well known that the equitable powers of the courts have been much extended since that period, and are now much better understood. The multiplication and variety of contracts now require a different rule. A jury would be a useless incumbrance on a question of equitable jurisdiction, unless there were some disputed facts — facts disputed in such a way as to compel a Court of Chancery to direct an issue,.which is the ordinary mode in the practice of that court.
Although it is always with regret, and great diffidence, that I differ from the court, yet I feel compelled, for the above reasonss to say that the judgment should be affirmed.
Judgment reversed.